```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION
```

Tasha K. Rudolph,                  :

      Plaintiff,                  :

  v.                               :    Case No. 2:13-cv-0057

                                          :    JUDGE GREGORY L. FROST
Commissioner of Social Security,       Magistrate Judge Kemp

      Defendant.                  :

## REPORT AND RECOMMENDATION

### I.   Introduction

Plaintiff, Tasha K. Rudolph, filed this action seeking review of a decision of the Commissioner of Social Security denying her application for supplemental security income. That application was filed on April 24, 2009, and alleged that plaintiff became disabled on April 1, 1999.

After initial administrative denials of her application, plaintiff was given a hearing before an Administrative Law Judge on August 28, 2011. In a decision dated October 20, 2011, the ALJ denied benefits. That became the Commissioner's final decision on November 30, 2012, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on April 1, 2013. Plaintiff filed her statement of specific errors on April 30, 2013. The Commissioner filed a response on August 9, 2013. Plaintiff did not file a reply brief, and the case is now ready to decide.

### II.  Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 34 years old at the time of the administrative hearing and who has a tenth grade education, testified as follows. Her testimony appears at pages 26-40 of

the administrative record.

Plaintiff last worked in 2008 for a temporary service agency.  She worked only 40 days, assembling posters.  Previously, she had worked for almost three months in a call center receiving calls and placing orders.  She lost that job when she walked out after she and her supervisor had words.

Plaintiff said she currently was unable to work because she was afraid of dealing with people and could not handle stress.  She had problems daily getting out of bed and ordering her thoughts.  She could not concentrate on television shows and was typically nervous, lonely and afraid.  She also experienced mood swings.  She did not go out by herself due to conflicts with others.  She also suffered from crying spells.  She did not sleep well.

Additionally, plaintiff said that she used to have auditory hallucinations frequently, but more recently it was only two or three times a month.  She used to have a cocaine problem but had only relapsed twice in the past three years.  She did not have any physical limitations at all.

In a typical day, plaintiff stayed in bed for all but three hours.  She did clean her house and would go to the mailbox.  She cooked, usually by using the microwave.  She did laundry although sometimes her aunt helped her with that chore.  Her aunt did the grocery shopping.  She attended counseling at Southeast Mental Health Center twice a month.  She was on medication but it did not seem to be helping her.

### III.  The Medical Records

The medical records in this case are found beginning on page 167 of the administrative record.  The Court summarizes the pertinent records as follows.

Plaintiff underwent screening at Netcare, a mental health provider, on September 3, 2003.  She was brought in by her grandmother.  Plaintiff's main complaint at that time was decreased sleep, but she also reported other symptoms of

depression, which had increased since the murder of her boyfriend.  She was assessed as suffering from anxiety and depression, and was to be treated with medication and counseling.  Netcare's records from about that time also show a GAF of 28.

The next Netcare records are dated in 2009.  They show that plaintiff reported a long history of panic attacks and also a prior diagnosis of bipolar disorder.  She was using alcohol to excess in order to sleep.  She also had cocaine dependence but it was in full remission.  At that time, her GAF was rated at 58.

Dr. Donaldson, a psychologist, saw plaintiff on August 18, 2009 for a consultative examination.  She reported problems getting along with others.  She was agitated during the examination and stated she did not know why it was being conducted.  Her affect was flat.  She reported manic episodes several times per week and she also experienced feelings of hopelessness and worthlessness.  She had said she had difficulty concentrating and that she worried excessively.  Dr. Donaldson evaluated plaintiff's intelligence as in the borderline range and thought she had limited judgment.  She had a full-scale IQ of 72.  His diagnoses included generalized anxiety disorder, bipolar II disorder, and borderline intellectual functioning.  He rated her GAF at 50-55 and thought she could deal with simple instructions and perform repetitive tasks without any impairment.  However, her ability to attend to relevant stimuli was moderately impaired, as was her ability to relate to others and to withstand ordinary work stress.  (Tr. 202-07).

A state agency reviewer, Dr. Waddell, also expressed opinions about plaintiff's mental impairments and limitations.  He thought she suffered from bipolar II disorder, borderline intellectual functioning, and generalized anxiety disorder, all of which caused her to suffer moderate difficulties in social functioning and in maintaining concentration, persistence and

pace. He concluded that she was moderately impaired in nine different areas of functioning, although two of them related to dealing with detailed instructions. The rest had to do with maintaining attention and concentration for extended periods, keeping a schedule and being punctual, working around others, dealing with changes in the workplace, and handling ordinary work stress. In the narrative portion of his report, Dr. Waddell said that "[c]laimant remains able to complete simple, routine tasks. She would work best in settings where interaction with others is minimal and superficial and in settings that did not require meeting strict time or production schedules." (Tr. 209-26). Those opinions were subsequently confirmed by Dr. Semmelman, another state agency reviewer. (Tr. 227).

The balance of the medical records show sporadic assessments and treatment, much of it for substance abuse. One note from February 11, 2011, indicates that plaintiff was referred to a Dr. Ahmed, who "found no mood disorder or psychosis of any kind." (Tr. 274). That note also lists the diagnosis of bipolar disorder as questionable. Plaintiff had said that after she lost a baby in November, 2010, she wanted to go back to work and was going to ask her case manager for assistance. She was attending group counseling and twelve-step meetings and she was having some group anxiety issues there, but she was relating well to others in her counseling group. For some of the time she was in counseling, she was either an inpatient at Maryhaven or living at Faith Mission. GAF ratings from that time period appear to range from 45 to 50. (Tr. 254, 321).

### IV. The Vocational Testimony

A vocational expert, Mr. Hartung, also testified at the administrative hearing. His testimony begins at page 40 of the record.

Mr. Hartung classified plaintiff's past work as an order

-4-

clerk as semi-skilled and sedentary, although plaintiff performed it at the unskilled level.  There was no other past relevant work.

Mr. Hartung was asked questions about someone who could work at any exertional level but who could do only simple, routine tasks, could work only in settings where interaction with others was minimal and superficial, and did not have to meet strict time-work production schedules.  He responded that such a person could not do plaintiff's past work, but that such a person could do a wide variety of unskilled jobs such as freight and stock handler, janitorial cleaner, grounds-keeping worker, and stock clerk.  If the same person were limited as plaintiff testified, or had to be off task 20 to 25% of the typical work day, she could not work.

V.   The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 8 through 17 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff had not engaged in substantial gainful activity after her application date of April 24, 2009.  As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had severe impairments including borderline intellectual functioning, a generalized anxiety disorder, a bipolar II disorder, alcohol dependence in remission, cocaine dependence in remission, and a mood disorder.  The ALJ also found that plaintiff's impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff had the residual functional capacity to perform a full range of work at all exertional levels

but was limited to jobs which could be done in settings where interaction with others is minimal and superficial and with no tight time deadlines or heavy production quotas.  The ALJ found that, with these restrictions, plaintiff could perform those jobs identified by the vocational expert such as freight and stock handler, janitorial/cleaner, and stock clerk (including order filler) and that such jobs existed in significant numbers in the regional economy.  Consequently, the ALJ concluded that plaintiff was not entitled to benefits.

VI.  Plaintiff's Statement of Specific Errors

In her statement of specific errors, plaintiff asserts that the ALJ's residual functional capacity finding was erroneous because it did not factor in the opinions of the consultative examiner, Dr. Donaldson, and it improperly weighed and credited the opinions of the state agency reviewer, Dr. Waddell.  The Court reviews the ALJ's decision using this legal standard:

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"

Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

   Plaintiff's first argument is that the ALJ was required by regulation (20 C.F.R. §416.927(c)) to evaluate all of the medical evidence and medical opinions in the record.  However, she claims that he did not evaluate Dr. Donaldson's opinion at all or discuss how much weight, if any, to assign to it, and that this failure was prejudicial error.  She contends that she was deprived of an important procedural right, namely the right to have that evidence weighed under §416.927(c), and that this failure was prejudicial since the record does not reflect how Dr. Donaldson's opinions were evaluated (if they were evaluated at all).  In response, the Commissioner argues, rather bluntly, that plaintiff's claim that the ALJ did not consider Dr. Donaldson's opinion is "false" and that even though Dr. Donaldson was not a treating source, "the ALJ appropriately considered and addressed Dr. Donaldson's findings."  Memorandum in Opposition, Doc. 17, at 3.  Obviously, a close review of the ALJ's decision is needed in order to resolve this issue.

   At page 12 of the record, the ALJ made the blanket statement that he "considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p."  On the following page, he described the evaluation done by Dr. Donaldson (whom he refers to as a DDS consultant) and he devoted a full paragraph to describing the observations made by Dr. Donaldson at that examination and some of the conclusions he

reached.  (Tr. 13-14).  After reviewing additional medical evidence, including the form filled out by Dr. Waddell, the ALJ reached his conclusion as to plaintiff's residual functional capacity, which he based on both that evidence and "the opinions of the DDS consultants."  (Tr. 15).  Given the earlier reference to Dr. Donaldson as a DDS consultant, this reference appears to include Dr. Donaldson as well as Dr. Waddell.  The ALJ's decision makes that even clearer by concluding with another reference to "medical records from treating sources, examination and evaluation by consulting doctors, and opinions from non-examining state agency medical consultants."  Id.  Dr. Donaldson was the only consulting doctor who performed an examination.  Therefore, plaintiff's claim that the ALJ made no reference to Dr. Donaldson's report or findings is refuted by the record.

    Plaintiff appears to be arguing, however, that the ALJ failed to comply with the applicable regulations by not citing to the various factors found in §416.927(c) and by not making an explicit finding as to the weight given to Dr. Donaldson's opinions.  Apart from the fact that Dr. Donaldson and Dr. Waddell appeared to agree that plaintiff suffered from, at most, moderate limitations in some areas of work-related function, and that Dr. Donaldson did not express the opinion that plaintiff was disabled, the Commissioner is correct that an ALJ need not provide a detailed rationale citing to all of the factors listed in the applicable regulation in order for the record to show that he performed the analysis mandated by that regulation.  This Court has held as much.  See, e.g., Nolan v. Commissioner of Social Sec., 2013 WL 1787386, (S.D.Ohio Apr. 25, 2013), adopted and affirmed 2013 WL 4831029 (S.D.Ohio Sept. 10, 2013).  There, the Court, quoting Smith v. Comm'r of Social Security, 482 F.3d 873, 876 (6th Cir.2007), concluded that "although the record must contain substantial evidence supporting the rejection or

discounting of a consultative examiner's opinion, social security regulations 'require[] ALJs to give reasons for only treating sources.'" It is only "when an ALJ completely ignores evidence from non-treating sources that is inconsistent with the ALJ's residual functional capacity assessment [that] a remand may be required." Id. at *6. And that is not what happened here, because the ALJ's assessment of plaintiff's residual functional capacity is fairly consistent with Dr. Donaldson's evaluation.

Plaintiff, however, argues for a different result, relying on the Court of Appeals' decision in Cole v. Astrue, 661 F.3d 931 (6th Cir. 2011). In Cole, however, the court was dealing with evidence from a treating source, not an examining consultant. So while it true that, with respect to a treating source, the ALJ must always give a statement of good reasons, supported by the evidence, for failing to afford that source's opinion controlling weight, the same is simply not true for consultative examiners like Dr. Donaldson. Cole is simply inapplicable to this case. There was no regulatory violation with respect to Dr. Donaldson's opinion, and certainly no prejudice to plaintiff from the absence of more detailed discussion of Dr. Donaldson's findings.

Plaintiff's other argument focuses on the way in which the ALJ treated Dr. Waddell's findings. The first part of the argument points out a seeming inconsistency between findings made by the ALJ as part of his use of the psychiatric review technique form and those made by Dr. Waddell. Plaintiff contends that the ALJ actually found her to be more limited, at least in the area of social functioning, than Dr. Waddell did, and the ALJ's statement that Dr. Waddell's views were supported by the record simply cannot be true in the face of this contrary finding.

There are a number of fatal flaws in this argument. The Commissioner correctly notes that the ALJ makes the final decision as to residual functional capacity and need not accept in its entirety the opinion of a state agency reviewer. Further,

plaintiff's argument actually seems to suggest that if the ALJ made a finding that was more favorable to her than those expressed in Dr. Waddell's report, it is the ALJ's more favorable finding that lacks support in the record.  That argument hardly supports a remand.  Lastly, the express purpose of the psychiatric review technique form is to evaluate the severity of a mental impairment and to compare its severity, if it is severe, to the Listing of Impairments.  <u>See</u> 20 C.F.R. §416.920a.  It is a different inquiry than the residual functional capacity evaluation, and is pertinent only at steps two and three of the five-step sequential process for evaluating disability claims.  <u>See Rabbers v. Comm'r of Social Security</u>, 582 F.3d 647, 652 (6th Cir. 2009)("The regulations provide a 'special technique' for evaluating the severity of a mental impairment at steps two and three").

    Plaintiff does argue that, to the extent that the ALJ accepted Dr. Waddell's findings in determining her residual functional capacity (which is step four of the process), he erred because Dr. Waddell's opinion was inconsistent with the record as a whole.  She points to some differences in his views and those of Dr. Donaldson and to some other facts - her homelessness or dependence on relatives, and her aunt's third-party report - as additional inconsistencies.  She also argues that mere consistency between Dr. Waddell's findings and the record is not enough to support the ALJ's reliance on those findings.

    The inconsistencies between Drs. Donaldson and Waddell are, at best, minor ones.  Dr. Donaldson did see a moderate limitation in plaintiff's motivation to complete work-related tasks, but that is not necessarily a psychological impairment, and not one noted on the residual functional capacity form which Dr. Waddell was required to complete.  In any event, Dr. Waddell found several moderate limitations on plaintiff's ability to function but nonetheless concluded that she could work with restrictions -

restrictions which, according to the vocational expert, did not preclude substantial gainful employment.  Additionally, it is not error for an ALJ to accept a medical opinion over third-party evidence, nor to find a claimant less than credible, and plaintiff has not argued any error with respect to the ALJ's credibility determinations.  Finally, although plaintiff suggests that even if Dr. Waddell's finding were consistent with the record, the ALJ erred by not going explicitly through the other factors found in §416.927(c), as noted above, there is no requirement that the ALJ do so, nor has plaintiff argued persuasively that if he had done so, he might have assigned less weight to Dr. Waddell's views.  The Court finds no error in the ALJ's decision to rely heavily upon both Dr. Waddell and Dr. Donaldson - and, contrary to plaintiff's argument, he considered both sets of opinions - in reaching his residual functional capacity determination.  Consequently, there is no basis for remanding the case.

## VII.   Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be overruled and that the Court enter judgment in favor of the defendant Commissioner of Social Security.

## VIII.   Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein,

may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge
